# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | Case No. 4:13-CR-005 |
| | § | (Judge Crone/Judge Mazzant) |
| CONRAD LEIJA MUNOZ | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court is Defendant's Motion to Suppress (Dkt. #52). After considering the motion, the response (Dkt. #57), the reply (Dkt. #58), the supplemental response (Dkt. #60), the supplemental brief in support of motion to suppress (Dkt. #72), the Government's response to the supplemental brief (Dkt. #73), and the oral arguments of the parties made on September 12, 2013, the Court recommends Defendant's motion be denied.

## BACKGROUND

On January 26, 2011, Detective Gerald Rutledge of the McKinney Police Department secured a search warrant to search the home of Defendant Conrad Munoz ("Defendant") located at #25 Dupree, McKinney, Texas. The warrant permitted seizure of the following: "property taken from motor vehicle burglaries to include but not limited to, tires and wheels, property taken from retail thefts to include but not limited to electronic equipment, and property taken from burglaries of businesses to include but not limited to, tablets and bottles of codeine liquid" (Dkt. #52 at Exhibit A). On January 28, 2011, officers with the McKinney Police Department, including the SWAT team, executed the search warrant at Defendant's residence. During the course of the search, officers found 84 tablets of alprazolam, approximately 5.37 grams of methamphetamine, and a scale. Further, officers found empty bottles in the trash that once contained prescription hydrocodone tablets, codeine, and prescription liquid promethazine. At

1

the time of the search, Defendant was detained in a vehicle identified leaving the residence. Defendant was arrested and interviewed at the police station in the interview room. Defendant was given his *Miranda* warnings and he waived them, both orally on video and in writing. He then acknowledged, both orally and in writing, that the drugs and other items found at the scene belonged to him.

At the hearing, the Court heard testimony from Detective Gerald Rutledge with the McKinney Police Department. At the time of the search, Detective Rutledge had been with the McKinney Police Department for 21 years. He testified that he was familiar with Defendant as a result of an organization in which Defendant was an associate. Detective Rutledge also testified that he was familiar with Francisco Perez ("Perez") who was alleged to be associated with Defendant and who had a violent history including an assault, and believed that Perez previously destroyed evidence at a traffic stop. In addition, Detective Rutledge stated that he was familiar with Cecilia Gonzalez, who was Defendant's girlfriend, lived at the residence searched, had an outstanding warrant for a parole violation out of the State of Texas, and had a history of resisting arrests.

Detective Rutledge testified that Defendant was alleged to have participated in an aggravated robbery of a Zales jewelry store in Plano, and was believed to have destroyed evidence during a traffic stop. Therefore, Detective Rutledge testified that the decision to do a "no knock" entry was based on both safety factors and a fear for the destruction of evidence. Detective Rutledge met with the SWAT team leader, who in turn reviewed the information with Detective Rutledge. Detective Rutledge noted that they were concerned that they were dealing with a member of a larger group or gang, so they could not be sure who would be inside the residence at the time of the search. The SWAT team found that this search met the matrix for

SWAT team involvement, and they determined how to execute the warrant. Detective Rutledge testified that the judges in McKinney, Texas, typically do not determine whether a warrant should be "no knock" or not. Instead, the judges prefer that the McKinney Police Department or SWAT team make that decision based on police tactics of today.

Following the search, Defendant's statement was taken at the McKinney Police Department. Detective Rutledge conducted a portion of the interview, and he was not aware if any other officer questioned Defendant. Detective Rutledge testified that Defendant was advised of his *Miranda* rights prior to the interview and waived those rights both orally and in writing. Detective Rutledge stated that the tone of the interview was very matter-of-fact and brief. During the interview, Defendant took ownership of the evidence found at the scene. At no time did Defendant request an attorney, and he did not invoke his right to remain silent.

Detective Rutledge also testified that he wrote the affidavit, which stated that there were outstanding warrants for Defendant's arrest; however, on his way to the courthouse to have the warrant reviewed, he learned that the arrest warrants had not yet been signed. Detective Rutledge then crossed out the information, initialed it, and handwrote on the warrant affidavit "no warrants yet." Detective Rutledge testified that he was unaware that there was another location in the affidavit that stated Defendant had arrest warrants, and had he been aware, he would have crossed out that statement as well.

On cross-examination, Detective Rutledge stated that he has received training on writing warrant affidavits, and that had there been any information important enough to be considered, he would have included it in the affidavit. Detective Rutledge noted that he discussed Defendant's suspected involvement in the Zales jewelry store in Allen with a Detective Mayfield. Detective Rutledge testified that he understood that Defendant was only mentioned in

the robbery and the only lead on that information was a co-defendant statement to that effect. Detective Rutledge confirmed that he did not include that information in the affidavit.

Detective Rutledge also testified that he recognized the voice of the anonymous caller discussed in the affidavit. He believed that he had interactions with the caller in the past, and knew this person to be someone involved in criminal activity. The caller indicated to Detective Rutledge that he or she was not involved in the criminal activity discussed. Detective Rutledge acknowledged that this information was not included in the affidavit. Detective Rutledge stated that he had his concerns regarding why the caller was providing this information, and did not discover the relationship between Defendant and the anonymous caller. Following the discussion with the anonymous caller, Detective Rutledge conferred with an Officer Lynch to discuss the retail thefts to determine if the information provided by the caller was accurate. Officer Lynch confirmed that there were retail thefts matching the descriptions given by the caller, and allowed Detective Rutledge to review the video footage from those thefts. Detective Rutledge identified Defendant, Perez and others, and was able to recognize Defendant's face in the video.

Detective Rutledge testified that he personally observed the traffic stop of Perez' vehicle, of which Defendant was a passenger, at a Taco Bell. Detective Rutledge testified that he observed the individuals run into the Taco Bell following the stop. He acknowledged that this information is not contained in the affidavit.

Officer Eric Stephens testified that he worked with the McKinney Police Department in January of 2011. Officer Stephens noted that he was involved in the search of Defendant's residence, and he was assigned to do a secondary search. Officer Stephens testified that in one of the rooms, he saw a stack of wheels and tires, and noted that fact because it was unusual.

Sergeant Damien Guerrero testified that he was the Sergeant over the special victims unit of the McKinney Police Department, and the leader of the SWAT unit at the time the warrant was executed. Sergeant Guerrero stated that he was asked to evaluate a search warrant for the residence located on Dupree, and put together the operational plans as requested by the police department. The type of entry done in this instance was called a "breach and call out," which entailed creating a distraction, creating an entry point, and then pulling the SWAT team back to call out to the occupants. Sergeant Guerrero testified that they chose this type of entry based on safety concerns, and a fear that evidence might be destroyed. On the day the search warrant was executed, the officers set up a perimeter and deported a flash bang on the southwest corner of the mobile home for distraction. In addition, they opened up the back door by breaking the glass of the storm door to create an entry point. At that point, the officers backed up behind the armored vehicle, and called out for the occupants to come out. Sergeant Guerrero testified that a female occupant appeared at the door, but stated that she could not walk out because of the broken glass. At that point, officers came in and removed her from the residence. At that point, they conducted a protective sweep to make sure the residence was safe for the other officers. Sergeant Guerrero testified that the SWAT team waited about three to five minutes before entering the residence.

## ANALYSIS

Defendant argues that the facts set forth in the warrant affidavit are insufficient to establish probable cause. Specifically, Defendant contends that while there are a significant number of facts included in the affidavit, none of the stated facts are sufficient to establish probable cause to search Defendant's residence. Defendant also contends that the issuing magistrate was misled by information in the search warrant affidavit. In addition, Defendant

argues that the execution of the search warrant violated the knock and announce principle, and that the Government failed to comply with Federal Rule of Criminal Procedure 41. Finally, Defendant contends that any statements made by him following the execution of the search warrant should be suppressed as fruit of the poisonous tree.

When considering the validity of a search warrant, the Court engages in a two-step inquiry: (1) the Court must determine whether the good-faith exception to the exclusionary rule applies; and (2) then the Court must determine whether the warrant was supported by probable cause. *United States v. Payne*, 341 F.3d 393, 399 (5th Cir. 2003); *United States v. Laury*, 985 F.2d 1293, 1311 (5th Cir. 1993); *United States v. Satterwhite*, 980 F.2d 317, 320 (5th Cir. 1992). The Court need not reach the question of probable cause if the good-faith exception applies, and the case does not involve a "novel question of law." *Payne*, 341 F.3d at 399; *Laury*, 985 F.2d at 1311; *Satterwhite*, 980 F.2d at 320. Since this case does not present a novel question of law, the Court should initially address the good-faith issue.

In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court concluded "that evidence obtained by officers in objectively reasonable good-faith reliance upon a search warrant is admissible, even though the affidavit on which the warrant was based was insufficient to establish probable cause." *Satterwhite*, 980 F.2d at 320 (citing *Leon*, 468 U.S. at 922-23). The good-faith exception does not apply under any one of four situations: (1) the issuing magistrate was misled by an affiant who knowingly, or with reckless disregard for the truth, provided the affidavit on which the magistrate relied; (2) the magistrate wholly abandoned his judicial role and acted as part of the law enforcement team; (3) the law enforcement officer relied on a warrant based on an affidavit so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable; and (4) the warrant itself was so facially deficient that the

executing officers could not have reasonably relied on its validity. *United States v. Cherna*, 184 F.3d 403, 407-08 (5th Cir. 1999). However, "[w]hen a warrant is supported by more than a 'bare bones' affidavit, officers may rely in good faith on the warrant's validity." *Satterwhite*, 980 F.2d at 321 (citations omitted). A "bare-bones" affidavit is one that contains "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *Id.* (citations omitted). In the present case, Defendant argues that the law enforcement officer relied on a warrant based on an affidavit so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable, or that the affidavit was a "bare bones" affidavit. Defendant also argues that the issuing magistrate was misled by the affiant, who provided incorrect information on which the magistrate relied. At the hearing, Defendant also made an argument that by failing to decide whether the warrant should be a "no knock" warrant, the issuing magistrate wholly abandoned his judicial role and acted as part of the law enforcement team.

Defendant contends that the issuing magistrate was misled by the affiant. The affidavit recites that both Defendant and Perez have outstanding warrants for their arrest. However, prior to presenting the issuing magistrate with the affidavit, Detective Rutledge learned that the warrants had not yet been issued. Therefore, Detective Rutledge crossed out the sentence indicating that Defendant and Perez were wanted by the Plano Police Department, and handwrote "No warrants yet." From a review of the affidavit, it appears that Detective Rutledge failed to correct another reference to these warrants earlier in the affidavit.

"A defendant challenging the applicability of the good faith exception on the ground that the court issuing the warrant was misled by information in the affidavit 'bears the burden of establishing by a preponderance of the evidence that the misrepresentation was made

intentionally or with reckless disregard for the truth.'" *United States v. Smith*, 81 F. Supp. 2d 719, 723 (E.D. Tex. 2000) (citing *United States v. Alvarez*, 127 F.3d 372, 373 (5th Cir. 1997)). Having carefully reviewed the affidavit in its entirety, the Court finds no evidence that Detective Rutledge intentionally or with reckless disregard for the truth misled the magistrate judge by failing to omit the prior reference to outstanding warrants for Defendant. Detective Rutledge clearly crossed out the sentence in the affidavit referring to the fact that Defendant was wanted, and wrote "No warrants yet." This sentence appears on the second to last page of the affidavit near to the issuing magistrate's signature block. Detective Rutledge's correction of the affidavit was sufficient, and, further, had Detective Rutledge been questioned about it, he would have indicated that there were no warrants issued at the time the search warrant was signed. Therefore, the Court finds that the issuing magistrate was not misled by the affiant.

Defendant also asserted, for the first time at the hearing, that the issuing magistrate wholly abandoned his judicial role and acted as part of the law enforcement team because the Collin County judges have a practice of allowing the law enforcement officers to determine whether the warrant should be a "no knock" warrant. There is no evidence or allegation in this case that the issuing magistrate was biased in any way. *United States v. Cherna*, 184 F.3d 403, 408 (5th Cir. 1999). Further, there is no evidence or allegation that the issuing magistrate acted as part of the law enforcement team. *See Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319 (1979) (holding that where the magistrate accompanied law enforcement officers to the store and conducted a six-hour search where he examined evidence and ordered officers to seize items he thought there was probable cause to believe obscene that the magistrate acted as an "adjunct law enforcement officer."). Thus, after reviewing the record, the Court concludes that there is no

evidence that the issuing magistrate in this case abandoned his role as a neutral and detached judicial officer.

Finally, Defendant contends that the law enforcement officer relied on a warrant based on an affidavit so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable, or that the affidavit was a "bare bones" affidavit. "'Bare bones' affidavits contain wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *Satterwhite*, 980 F.2d at 321 (citation omitted). "When considering a challenge to a search warrant affidavit, courts must keep in mind that 'an affidavit need not present a watertight criminal case to support good-faith reliance on a warrant.'" *Smith*, 81 F. Supp. 2d at 724 (citing *Cherna*, 184 F.3d at 411). "An affidavit need only provide the court issuing the warrant with enough information 'to allow the conclusion that a fair probability exist[s] that seizable evidence w[ill] be found on the premises [to be searched].'" *Id*. (citing *Cherna*, 184 F.3d at 411 n.2). In *Illinois v. Gates*, 462 U.S. 213, 238 (1983), the Supreme Court found that courts are to employ a "totality of the circumstances" analysis in determining whether an affidavit sets for sufficient information to conclude that there is probable cause for the issuance of the warrant. The Supreme Court also explained that uncertainty about an anonymous informant's veracity can be compensated for by other indicia of reliability and trustworthiness. *Id*. at 238-48.

In the present case, a large amount of the information obtained and related in the warrant affidavit was provided to the officers by an anonymous tipster. The Fifth Circuit has identified several "indicia of probable cause" which prevent an affidavit based upon information from a confidential informant from being a bare bones affidavit. *United States v. Fields*, 182 F. Supp. 2d 575, 579 (E.D. Tex. 2002).

> These indicia include: (1) whether the informant's statements are against his or her own penal interests, *United States v. McWaine*, 243 F.3d 871, 874 (5th Cir. 2001); *United States v. McKeever*, 5 F.3d 863, 864 (5th Cir. 1993), (2) whether the information has been corroborated by independent investigation or contemporary observation of police, *McWaine*, 243 F.3d at 874; *United States v. Pena-Rodriguez*, 110 F.3d 1120, 1130-31 (1997), (3) the degree of detail of the information provided by the informant, [*United States v. Cisneros*, 112 F.3d 1272, 1278-79], and (4) whether the informant's reliability is corroborated by something other than unsupported conclusions of the affiant. *See* [*United States v. Barrington*, 806 F.2d 529, 531].

*Id*.

In the present case, there is no evidence that the anonymous informant's statements were against his or her own penal interests. While Detective Rutledge testified that he recognized the voice of the informant, and believed the person to be someone involved in criminal activity, none of these statements are included in the affidavit. Moreover, Detective Rutledge stated that the informant denied involvement in any of the robberies or other criminal activity in which the informant accused Defendant of participating.

The second indicia of reliability is whether the information has been corroborated by independent investigation or contemporary observation of police. It is undeniable that Detective Rutledge's testimony far exceeded what he signed and swore to in his affidavit reviewed by the magistrate. Claims that would tend to provide corroboration for the anonymous tipster's information are absent from the affidavit. The affidavit states that during the first week of January, Detective Rutledge was contacted by Detective Mayfield, a detective with the Allen Police Department, who inquired whether Detective Rutledge was familiar with Defendant or Jeremiah Armijo. Detective Mayfield stated that both were suspects in the robbery of a Zales located in Allen. On January 14, 2011, Detective Rutledge received his first call from the anonymous tipster, who indicated that Defendant, Jeremiah Armijo, and Francisco Perez robbed the Zales in Allen. The caller indicated that Defendant and Perez were also responsible for the

burglaries of CVS pharmacies in McKinney. The informant indicated that Perez was living in Plano at an unknown address and drove a gold, late model Dodge Charger with stolen rims that belonged to Perez' wife, Amy Gonzales Perez. The only information from this call that was corroborated by the investigation of police and appears in the affidavit is that Amy and Francisco Perez drove a gold, 2009 Dodge Charger.

During the second call, the informant stated that Perez' gang was responsible for stealing electronics from Wal-Mart stores during the night and had also burglarized a Zales in Plano recently. The informant identified the suspects as Michael Tijerina "Mikey T," Francisco Perez, Defendant, and Jeremiah Armijo. The affidavit recites that Detective Rutledge checked with other detectives in the McKinney Police Department to see if similar crimes were in their records. He confirmed that Detective Teresa Lynch had an open case involving the theft of approximately 40-50 IPODS during a night time theft at a Wal-Mart in McKinney. In addition, Plano Detective Vidmar was investigating a $20,000 theft of diamonds from a Plano Zales location. The affidavit then recites the following:

> These thefts were captured on video and during the course of this investigation the following suspects have been positively identified. Also captured on video was a gold Dodge Charger and a red Neon Charger used during the commission of one theft at a McKinney Wal-Mart.
>
> Perez, Francisco Israel      w/m   10-16-1986
> Munoz, Conrad Leija          w/m   04-10-1992
> Tijerina, Michael Anthony    w/m   10-16-1986
> Armijo, Jeremiah             w/m   07-12-1994

Detective Rutledge testified that after speaking with Detective Lynch and Detective Vidmar, that he reviewed the video footage himself, and personally identified Defendant on the video footage for the thefts. However, there is no claim in the affidavit that Detective Rutledge actually saw Defendant. The affidavit merely recites that the thefts were captured on video, and that at some

11

point during the course of the investigation Defendant was identified as a suspect. Detective Rutledge does not identify who positively identified Defendant or how Defendant was identified, and neither of the cars observed in the video belong to Defendant or were traced to his home. Thus, this information is insufficient to show corroboration of the information provided by the anonymous informant.

At this time, Detective Rutledge began to conduct surveillance on Perez. He contacted Amy Perez at her place of employment to attempt to set up a meeting, and began searching for any address or record for Perez. On January 19, 2011, Detective Rutledge, as well as other officers with the Plano Police Department, observed Perez picking his wife up for work. At this time, they observed Perez commit several traffic violations, and so they conducted a traffic stop at a Taco Bell in Plano. Perez was arrested for an invalid driver's license. Defendant was one of the passengers in the vehicle. As a result of the arrest, the car was impounded and a GPS tracking device was installed on the vehicle. In addition, detectives viewed a photograph on Perez' phone, which depicted a large bottle of promethazine codeine. As a result of the GPS tracking device, detectives learned that the vehicle roamed around the metroplex at night, but returned early in the morning to an address on Park Boulevard in Plano, Texas. Subsequently, Detective Rutledge conducted surveillance on the Park Boulevard address of Francisco and Amy Perez. This portion of the investigation goes mostly to corroborate the facts provided by the anonymous caller as to Francisco Perez. The only fact regarding Defendant obtained during this investigation is that he was a passenger in Perez' car during the stop. Detective Rutledge fails to include in the affidavit that he had observed Perez and Defendant together on multiple occasions, or that he talked to witnesses at the scene about the Taco Bell traffic stop. Detective Rutledge also does not mention that he noticed any unusual or suspicious behavior during the traffic stop.

However, at the hearing Detective Rutledge testified that he talked to witnesses and came to the conclusion that evidence had been destroyed, and recalled seeing Defendant and others run inside the Taco Bell. These statements were not before the issuing magistrate and cannot now be used to support probable cause.

The third call from the anonymous caller advised Detective Rutledge that the caller was aware that Perez had been arrested, and that during the traffic stop, the suspects in the vehicle had eaten a large number of tablets during the stop. The caller also knew that the traffic stop had taken place at a Taco Bell. This information is some evidence of corroboration, since it verified information Detective Rutledge already knew, except the fact that the suspects had eaten a large number of tablets during the stop. This fact was never corroborated.

The fourth and final call from the anonymous informant indicated that Defendant's address was #25 Dupree, McKinney, Texas, and the caller stated that Defendant was living there with Cecilia Gonzales. The anonymous informant stated that they were driving a gold Jeep Cherokee, and that Defendant had in his possession a mesh bag containing a large amount of stolen prescription tablets, as well as a set of stolen tires and wheels. To corroborate this information, Detective Rutledge drove past Defendant's home, observed a gold Jeep Cherokee, and found that it was registered to a Cecilia Gonzales.

It is clear that the anonymous informant knew some information about Defendant, such as the car he and his girlfriend were driving. However, the information regarding Defendant provided by the informant that was able to be corroborated included only the address and vehicle driven by Defendant. These facts are readily observable by anyone walking down the street. There are very few facts provided by the confidential informant that reveal his or her familiarity with Defendant. However, the confidential informant does provide information about Perez that

the law enforcement officers were able to corroborate, to some extent. Therefore, the Court finds that because the information provided by the anonymous informant was able to be corroborated to some extent, there was some indicia of reliability in the information given by the anonymous informant regarding the bag of prescription drugs reported to be in Defendant's possession.

Third, the information provided by the informant is not particularly detailed. The information provided describes addresses, general locations of the robberies and descriptions of the items stolen, and cars driven by Defendant and Perez. The caller did not identify what was stolen from Wal-Mart or Zales, or identify how the robberies occurred.

Finally, there is nothing in the affidavit to support the informant's reliability other than the conclusions of Detective Rutledge. The affidavit contains no statement regarding the informant, if Detective Rutledge knew the informant, and whether he or she had provided reliable or credible information in the past. *See United States v. Ramirez*, 247 F. App'x 515, 518 (2007). The information provided by the anonymous informant does not contain any predictions of future behavior of Defendant. *See Alabama v. White*, 496 U.S. 325 (1990).

Based on the above analysis, the Court finds that because the anonymous tips contained in the warrant affidavit were able to be corroborated by law enforcement, and thus, contain sufficient indicia of probable cause to allow the issuing magistrate to judge the credibility of the anonymous tipster.

Thus, considering the statements made in the affidavit, we have a tip from an anonymous source indicating that Defendant had in his possession a bag of prescription medications. We know that Defendant was mentioned by Detective Mayfield as a possible suspect in conjunction with a Zales robbery. Defendant has a criminal history. Defendant was a passenger in a car that was driven by Perez during a traffic stop, and Defendant and/or his girlfriend drives a gold Jeep

Cherokee.  The Court notes that the information provided in the affidavit as to Defendant is scarce, especially when compared to the information in the warrant affidavit regarding Francisco Perez.  In the Court's opinion, this is a very close call and not a well-written warrant affidavit.  However, the Court finds that the affidavit in this case provided more than "wholly conclusory statements" and provided a sufficient factual basis to enable the magistrate judge to make a meaningful probable cause determination.  *See Gates*, 462 U.S. at 239.  Under a totality of the circumstances, the Court cannot say that the affidavit was lacking in indicia of probable cause.  "The Court notes that the question regarding a bare bones affidavit is not whether every single fact alleged by the affiant is per se illegal or whether there is a legal explanation for that fact.  The question is whether the affidavit is 'so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable.'"  *United States v. Troung*, No. 4:09-CR-221, 2010 WL 774929, at *2 (E.D. Tex. March 1, 2010) (citing C*herna*, 184 F.3d at 407-08).  Therefore, the affidavit in this case is not bare bones, and the good-faith exception does apply.  As a result, the Court need not consider whether the warrant established probable cause.  For these reasons, the Court recommends Defendant's motion be denied.

In its supplemental reply, the Government asserts that even without a search warrant, the officers had an independent reason for their entry into Defendant's residence.  The Government contends that Cecilia Gonzales, Defendant's girlfriend, was living at the residence with Defendant, and she had an outstanding warrant for her arrest for a parole violation.  The Government argues that while arresting Gonzales, the officers lawfully conducted a protective sweep of the residence and saw, in plain view, some stolen tires and wheels that formed the basis for part of the search warrant.  However, the Court will not consider this argument, since Defendant is not currently being charged for the stolen tires and wheels.  The pharmaceutical

15

drugs and other evidence seized as a result of the search warrant would not have been in plain view, and could not have lawfully been seized as a result of the arrest warrant for Gonzales. Further, there is insufficient evidence to determine whether the law enforcement officers knew that Gonzales was located inside the residence at the time they executed the search warrant. No officer testified that they saw her enter the residence, and her car was no longer at the residence at the time the search warrant was executed. In *Steagald v. United States*, the Supreme Court held that in the absence of exigent circumstances or consent, the police are not justified in searching a third person's home for a person as opposed to an object. 451 U.S. 204, 214 (1981). "A contrary conclusion – that the police, acting alone and in the absence of exigent circumstances, may decide when there is sufficient justification for searching the home of a third party for the subject of an arrest warrant – would create a significant potential for abuse. *Id*. at 215. "Armed solely with an arrest warrant for a single person, the police could search all the homes of that individual's friends and acquaintances." *Id*. Moreover, as in the present case, "an arrest warrant may serve as the pretext for entering a home in which the police have a suspicion, but not probable cause to believe, that illegal activity is taking place." *Id*. Therefore, the Court finds that the arrest warrant for Gonzales does not justify the search conducted at Defendant's residence.

Defendant also asserts that the Government violated Federal Rule of Criminal Procedure 41, which authorizes the issuance of a federal search warrant only upon the request of a federal law enforcement officer or an attorney for the government. However, "[w]hen a state officer secures a warrant from a state judge, Federal Rule of Criminal Procedure 41(a) is not the rubric for determining whether the search warrant was issued by an appropriate court even when the seized evidence is offered in federal court." *United States v. Conine*, 33 F.3d 467, 469 (5th Cir.

1994).  Detective Rutledge is a state law enforcement officer with the McKinney Police Department, and no federal agents were involved either before or during the execution of the warrant.  Because Detective Rutledge is not a federal law enforcement officer, Rule 41 is not triggered.

Defendant also contends that the Government failed to knock and announce prior to searching Defendant's residence.  The knock and announce rule does not apply when law enforcement concerns outweigh personal privacy issues.  Sergeant Guerrero testified that they were concerned with the safety of the officers given Defendant's criminal history, and participation in a gang.  Because of these safety concerns, the SWAT team elected to do a breach and "call out," where the door or entry point is forced open and the officers then retreat to entice the occupants out of the residence.  Therefore, the Court finds that there was no violation of the knock and announce rules.

Defendant also asserts that any statements made by him as a result of the search of his home should be suppressed as fruit of a poisonous tree.  Defendant was stopped by police officers after leaving his home that morning for an undisclosed traffic violation, taken to the police station, and questioned in a well-lit interview room.  Defendant was given his *Miranda* rights both at the beginning of the interview, and at the end of the interview. Defendant waived his *Miranda* rights both orally and in writing.  The interview was short and matter-of-fact, and Defendant was not threatened in any way.  At no time did Defendant invoke his right to an attorney or his right to remain silent.

The fruit of the poisonous tree doctrine or the derivative evidence doctrine "requires exclusion of evidence that is the indirect product or 'fruit' of unlawful police conduct.'"  *United States v. Johnson*, 95 F.3d 1149, at *8 (5th Cir. 1996).  "Evidence that is a fruit of an illegal

search, both tangible and testimonial, must be excluded up to the point at which the connection with the unlawful search becomes 'so attenuated as to dissipate the taint.'" *United States v. Doe*, 801 F. Supp. 1562, 1576 (E.D. Tex. 1992). "*Miranda* warnings, alone and per se, cannot always make the act sufficiently a product of free will be break, for Fourth Amendment purposes, the causal connection between the illegality and the confession." *Brown v. Illinois*, 422 U.S. 590, 603 (1975).

> The *Miranda* warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered. The temporal proximity of the arrest and the confession, the presence of intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct are all relevant.

*Id*. at 603-04 (citing *Wong Sun v. United States*, 371 U.S. 471, 490 (1963)) (internal citations omitted).

The burden of showing admissibility rests on the prosecution. *Id*. at 604. In the present case, the Court found that the good-faith exception applies, and there was no illegal police conduct. Therefore, Defendant's statements should not be suppressed as the fruit of the poisonous tree.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the Court recommends Defendant's Motion to Suppress (Dkt. #52) be **DENIED.**

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de*

*novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 7th day of October, 2013.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE